IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER LYNN HANCUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 13-119E |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge

## OPINION

Pending before the Court are Cross-Motions for Summary Judgment. (ECF Nos. 11 and 14). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 11 and 15). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment (ECF No. 11) and granting Defendant's Motion for Summary Judgment. (ECF No. 14).

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to the Social Security Act ("Act"). Plaintiff filed her application for disability insurance benefits on June 23, 2010, alleging she had been disabled since March 1, 2008. (ECF No. 5-5, p. 4). Plaintiff filed her application for supplemental security income on June 23, 2010, alleging she had been disabled since April 1, 2009. (ECF No. 5-5, p. 11). Administrative Law Judge ("ALJ"), Tom Duann, held a video hearing on October 24, 2011. (ECF No. 5-2, pp. 52-78). On January 9, 2012, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 5-2, pp. 32-47). After exhausting all administrative remedies,

1

Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 11 and 14). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must

determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Residual Functional Capacity (RFC)[1]

Plaintiff essentially argues that the ALJ's RFC finding is not supported by substantial evidence. (ECF No. 11, pp. 7-13). Specifically, Plaintiff submits that "in finding the plaintiff capable of light work, the ALJ mischaracterizes key medical evidence, fails to grant proper weight to the opinion of the plaintiff's treating physician, and does not adequately consider the non-exertional limitations posed by Plaintiff's mental impairments and chronic pain." *Id.* at p. 8. As such, Plaintiff argues that the hypothetical question posed to the vocational expert (VE) does

---

[1] RFC refers to the most a claimant can still do despite his/her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his/her own limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

not contain the essential factors of her RFC. *Id.* at p. 7. Therefore, Plaintiff contends that the opinion of the ALJ is not supported by substantial evidence and should be reversed. *Id.* at pp. 7-13. After a review of the evidence, I find that each of these arguments lack merit.

With regard to mischaracterizing key medical evidence relating to Plaintiff's interstitial cystitis, Plaintiff argues that the ALJ erred in stating Plaintiff had "few follow up examinations" and complained of only urinary frequency on one occasion and only occasional discomfort on another occasion. (ECF No. 11, p. 8). According to Plaintiff, she "consistently sought treatment for this condition through Floyd Csir, MD beginning on June 24, 2009[2]….These records include multiple visits and documented procedures for plaintiff's impairment; not a 'few visits' with nominal findings, unlike the ALJ's characterization of the same." (ECF No. 11, p. 8). The ALJ actually stated as follows:

> With regard to the claimant's interstitial cystitis, she has had few follow up examinations since the application date. Her physical consultative examination in October 2010 did show tenderness over her bladder (Ex. 17F). However, at an appointment with her own doctor on August 26, 2010, she complained only of urinary frequency, not pain, and her abdominal examination was normal. Similarly, on February 24, 2011, she complained of only occasional discomfort, and her examination was again normal (Ex. 22F).

(ECF No. 5-2, p. 42). While it may be true that Plaintiff had multiple visits to the doctor from June of 2009 (ECF No. 5-8, pp. 44-49), from June of 2010 through the date of the determination, there is substantial evidence of record to support the finding of the ALJ that Plaintiff improved only having had a few follow up exams with occasional discomfort. (ECF No. 5-10, pp. 60-63). Consequently, I find no error in this regard.

---

[2] To be eligible for DIB, a claimant must show that he or she was disabled on or before his or her date last insured. 20 C.F.R. §§ 404.101, 404.130, 404.131, *et seq.*; *see also Matullo v. Bowen,* 926 F.2d 240, 244 (3d Cir. 1990) (observing that a claimant is required to establish that she became disabled prior to the expiration of her insured status). In this case, Plaintiff was insured for DIB purposes through March 31, 2008. (ECF No. 5-2, p. 32). Thus, she must establish that she became disabled on or before that date to be eligible for DIB. Since Plaintiff alleges she first sought treatment for her interstitial cystitis beginning on June 24, 2009, Plaintiff is not entitled to DIB for her interstitial cystitis. Consequently, Plaintiff's claim for interstitial cystitis could only be considered under SSI.

For purposes of SSI, a claimant is only entitled to benefits starting "the month following the month [the claimant] filed the application." 20 C.F.R. §416.335. SSI is not retroactive. *Id.;* 20 C.F.R. 416.200, *et seq.* In this case, the application date was June 23, 2010.

Next Plaintiff argues that the ALJ erred in assessing Plaintiff as only partially credible. (ECF No. 11, pp. 8-9). As to Plaintiff's credibility, the ALJ stated as follows:

> The undersigned notes that the claimant's statements about her symptoms and limitations are only partially credible, largely due to the objective medical evidence in the record and her treatment history. As noted above, most of the objective medical findings in the record for the claimant are quite mild, and the treatment history undermines her credibility. For instance, she has had few follow up examinations for her interstitial cystitis, and her abdominal examinations have been normal. Moreover, her cervical spine imaging has showed only very mild degenerative changes, she is not a surgical candidate, and she has not pursued physical therapy. She has not had any seizures since the application date, and Dr. Rezek's records generally indicate that her seizure disorder is well-controlled, her migraines are apparently only occasional, and her pineal cyst is stable. Essentially, the claimant's statements regarding her symptoms are significantly more inflated that (sic) is portrayed in the treatment records.

(ECF No. 5-2, pp. 43-44). Plaintiff parses out the ALJ's summation above. First, Plaintiff submits that the ALJ erred when he stated that she had only a "few" follow up examination for her interstitial cystitis. (ECF No. 11, p. 9). As discussed previously, since Plaintiff's application date of June 23, 2010, Plaintiff has only had three examinations for her interstitial cystis. As a result, I find no error in this regard.

Second, Plaintiff submits the ALJ erred when he stated that she had not had any seizures since her application date and that her pineal cyst is stable. (ECF No. 11, pp. 8-9). In pointing to this alleged error, Plaintiff states that she had at least two seizures since her application date, but then references medical records of March 2010 and May 2010. Plaintiff's application date is June 23, 2010. As a result, both references are prior to the applications. Thus, I find no error in the statement by the ALJ.

Third, Plaintiff submits that the ALJ erred in finding that her pineal cyst is stable. (ECF No. 11, pp. 9). A review of the record demonstrates, however, that there is substantial evidence of record to support the conclusion that Plaintiff's pineal cyst is stable. *See,* ECF No. 5-9, pp. 67 and 70; No. 5-10, pp. 66-71, 74, 90, 93. Thus, I find no error in this statement by the ALJ.

Next, Plaintiff argues that the ALJ mischaracterized the evidence of Plaintiff's mental

5

impairment. (ECF No. 11, pp. 9-10). She takes issue with the ALJ giving significant weight to the findings of Dr. Mercatoris, the psychological consultative examiner while only giving moderate weight to the neuropsychological evaluation of Dr. Bennett because their findings are consistent. *Id.* at pp. 9-10. After a review of the record, I disagree that Dr. Mercatoris' findings and the findings of Dr. Bennett are consistent. *Compare,* ECF No. 5-10, pp. 4-12, *with,* No. 5-10, pp. 105-110. As the ALJ points out, Dr. Mercatoris found Plaintiff to have exhibited "good eye contact and normal motor behavior, was not overly anxious, and had a euthymic, full range, and appropriate affect. Her verbal productions were fluent and goal-directed, and she did not indicate that she had any abnormalities in her thought content. She was oriented, her memory was generally intact, and she exhibited good concentration. She was diagnosed with major depression, and Dr. Mercatoris opined, among other things, that she has only slight limitations, at worst, in her ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting (Ex. 16F)." Dr. Bennett, on the other hand, found Plaintiff to have a Global Assessments of Functioning ("GAF")[3] score of 50. A GAF score between 41-50 sometimes denotes "serious symptoms (e.g., suicidal ideation…)…OR any serious impairment in social, occupational, or school functioning." *Id.* An individual with a GAF score in this range (41-50) *may* be "unable to keep a job." *Rios v. Commissioner of Social Sec.*, 444 Fed.Appx. 532, 535, 2011 WL 4059780, *2, n.3 (3d Cir. 2011). The ALJ gave only moderate weight to this assessment because it was inconsistent with Dr. Mercatoris' "fairly benign findings" and Plaintiff's limited mental treatment history. (ECF No. 5-2, p. 44). Based on a review of the record, I find there is substantial evidence to support the finding of the ALJ. *See,* ECF No. 5-2, p. 44; and No. 5-10, pp. 4-12. Thus, remand on this basis is not

---

[3] A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, ("DSM–IV TR") 34 (4th ed. 2000).

warranted.

Additionally, Plaintiff argues that the ALJ erred in discounting the opinion of Plaintiff's treating physician, Dr. Rezek. (ECF No. 11, pp. 10-12). The ALJ gave little weight to the opinion of Dr. Rezek that Plaintiff has been disabled and unable to work since 2006. (ECF No. 5-10, p. 112). The amount of weight accorded to a physician's opinions is well established.

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.' " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Commissioner of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, *5 (3d Cir. Dec. 14, 2010).

In this case, the ALJ gave little weight to Dr. Rezek's opinion that Plaintiff has been disabled and unable to work since 2006 because it is internally inconsistent and inconsistent with other evidence of record. (ECF No. 5-2, p. 44). After a review of the record and as set forth above, there is substantial evidence of record to support the finding of the ALJ. For example, Dr. Rezek's opinion is unsupported by his treatment notes which show that Plaintiff has had no seizures since the application date, has only occasional headaches which are controlled with medication, and has only a stable pineal cyst. (ECF No. 5-2, p. 44; No. 5-9, pp. 17-36, No. 5-10, pp. 66-78). Moreover, Dr. Rezek did not treat Plaintiff in 2006 or 2007. *Id.* In fact, he only began treating Plaintiff in May of 2008. *Id.* Thus, Dr. Rezek did not have a medical basis to say Plaintiff was disabled beginning in 2006. *Id.* Finally, Plaintiff indicated on her Disability Report that she stopped working in 2006 not because of her medical conditions but because she was laid

off. (ECF No. 5-6, p. 17). Thus, there is substantial evidence to support the opinion of the ALJ. Therefore, I find no error in this regard.

Finally, Plaintiff argues that the ALJ erred in failing to ask the vocational expert hypothetical questions that accurately reflect Plaintiff's impairments. (ECF No. 12, p. 10). I disagree. An ALJ is required to accept only hypothetical questions which accurately reflect a plaintiff's impairments. *See, Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The record reveals substantial evidence that the ALJ's hypothetical questions accurately reflected Plaintiff's impairments. Consequently, I find no error in this regard.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER LYNN HANCUFF, )
)
      Plaintiff, )
)
 -vs- ) Civil Action No. 13-119E
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 19th day of March, 2014, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 11) is denied and Defendant's Motion for Summary Judgment (Docket No. 14) is granted.

          BY THE COURT:

          s/ Donetta W. Ambrose
          Donetta W. Ambrose
          United States Senior District Judge